GENNADI LEVITIN Let me please report, Your Honors. My name is Gennadi Levitin for the appellant, Emile Kamel. I believe this case is well briefed on both sides, so I will limit my arguments to hopefully a lot less than 20 minutes. Let me ask you, so basically your client wants a forced sale at the year 2000 property values as opposed to the year 2003 property values as part of the remedy in this case. He wants a sale, but I disagree with the characterization of being forced. All right, let's just, let's take out forced. Okay. Is there any case at all that supports that remedy as, well, let me ask it a different way. Is there any case at all that finds that it is an abuse of discretion for the district court not to have awarded that remedy? EQUILON GENNADI LEVITIN I don't believe there is a case that finds that. But what I'm focusing on is was Mr. Kamel, was the remedy that was ordered, did that directly address the PMPA violation that was in dispute? Mr. Kamel did everything that he could possibly do under the PMPA to protect his rights. He accepted Equilon's offer under protest. He made a deposit. He, Equilon opened escrow. He went to court, got an injunction to keep the offer open during the course of the litigation. He also went, when Equilon tried to withdraw that offer at one point in time and give him a new revised offer because they had realized they had made an error, the district court ordered Equilon to withdraw that offer and for Mr. Kamel to reinstate the escrow. So that escrow was open and the offer was in place all the way through trial. And when Mr. Kamel prevailed, he got two jury verdicts. One jury verdict said that the offer was not bona fide. The second jury verdict said what the bona fide price would be, what the price would be that would approach fair market value. Then the court took it out of the jury's hands and rendered his, the court's decision, basically saying we are rescinding that entire agreement that has already been in place. We are rescinding the escrow. Mr. Kamel can now have his deposit back with interest, which kind of contradicts the prior order, which ordered Mr. Kamel to put the deposit back and reopen the escrow. I believe that may validate the law of the case in this situation. And then says Mr. Kamel is now back to being a franchisee. By the way, there was also no order saying that Mr. Kamel's franchise is now renewed because the franchise agreement expired in 2000. And this case has been in litigation for three years. So are you asking for an order to renew the franchise if we don't have them sell it to you? I would be, that would be an alternative, I believe. But what we're really asking for is to allow the parties to close escrow on the contract that had already been enforced. This is not a situation where Mr. Kamel sued to challenge the offer without ever accepting it and got an injunction. And at the end is saying, well, now I want to buy it. So Equilon, Judge forced Equilon to not give me a new offer so we can, so I can buy it. That's not the case. The case is that Mr. Kamel accepted the offer. There was a written offer and was in escrow to close it. What was in dispute were a couple of terms regarding the offer. And the Court clearly had the power to reform the contract to make it comply with a new agreement. And I think that's where maybe the confusion was. But if Mr. Kamel, if you step back a second, and if Mr. Kamel, for example, would have accepted the offer, closed escrow on the property, and then sued for damages, he could have accepted the offer under protest, closed escrow instead of getting an injunction, sued for damages. He would have paid $645,000 for that property. He would have gone through trial. He would have prevailed, presumably as he did already, in saying that the price should have been $480,000. And he would have been entitled to a refund of the difference, of the overpayment. That would have been his remedy. Simply because Mr. Kamel didn't close escrow for the non-bonafide price, but actually challenged it, now he's left without the ability to even purchase that property for that, for that price. So the remedy that would have directly addressed the violation that the PNPA, that the would have benefited Mr. Kamel had he actually closed escrow. In other words, the purchase price. So let me just ask, if we were to affirm the district court, what happens in the franchise relationship? Well, if you were to affirm the district court, as the papers do explain, Mr. Kamel was given a right of first refusal based on another, based on a third party, the same third party who was involved in this case. But it's a higher price? Yes, much higher price. Then do you have another action? There is another action pending that challenges that price, but under a right of first refusal in the PNPA, Mr. Kamel cannot challenge the real estate value. He can only challenge the value of the equipment and improvements, because the real estate value is being purchased as a right of first refusal, so it's presumed bonafide. But that's based on the value of the property today. When this action was started and Mr. Kamel obtained injunctive relief to preserve his rights, he was trying to lock in the value at the time of the offer, at the time of the non-renewal, which was three years ago, which was 480, which at this point in time, the value is over a million dollars for the same property. So in essence, this whole case does not make any sense, because Mr. Kamel, instead of he — if this Court affirms this decision, and I've experienced this with other cases, dealers will be left in a catch-22. An oil company can make an illegal offer to a dealer for a price that exceeds fair market value. The dealer is now left with a decision. Am I going to accept this offer under protest and sue, or am I going to accept this offer in closed escrow and sue for damages? So if a dealer can actually get a loan for a price that is above fair market value, which may be difficult, he can accept the offer, overpay for it, and sue for damages. If the dealer decides not to pay the overpriced offer or cannot do it because it's overpriced, the dealer is left to sue. While the case is in litigation, the oil company can then obtain a right of first refusal from a buyer. It can withdraw the offer that's already in place and give him a new offer, or it can just sit on its hands, let the trial proceed for three years. And when the dealer prevails, the only thing the dealer gets is the ability to just remain in business, and the oil company can then sell the property at a lower price. Now, the other thing that we have is the PNPA, which is a preliminary injunction process. And it's a process that's being used by the PNPA to justify the fact that the state values are always going up in California. So it really defeats the purpose of the PNPA, and it defeats the purpose of having a preliminary injunction process. Let me stop you for just a second to make sure I understand. Camel accepts an offer to buy the station. He then goes into court and gets an injunction saying, I think I'm being forced to pay too much for the station. Correct. And three years later, the station is now worth more than what he was willing to pay before. It's worth even more than what the offer was from Equaline. So he could have bought it for the higher price that Equaline was offering him, and he would still come out better than having to go all the way through trial and prevail at trial. So if he had closed escrow and then sued, he would have been in a much better position than he is now. Clearly. But if every dealer is forced to close escrow at a price that exceeds the fair market value, it would defeat the whole injunctive relief provisions of the PNPA to protect the franchisee. Was the jury break an advisory jury? I was one of the trial attorneys in this case. And at the time of the jury, the way it happened is the court bifurcated the trial. The court decided that we're going to have a jury verdict on whether it was fair market value and whether it was bona fide and what the fair market value price would be. The second part of the trial would be the injunctive relief part of it, because the court ordered the injunctive relief under the PNPA. So you could call it advisory, but that's not how it was described in the record. It was just a bifurcated trial for facts and law. The injunctive relief that was finally ordered was that you get $64,000, and if you want to go back to that. Really, there was no injunctive. Well, the injunctive relief that was ordered is that the franchise can continue as it had been, which basically means that Mr. Camel was now without a lease, because his lease had expired three years ago. And it would mean that, because when a franchisee has, let's say, a three-year lease with an oil company, the oil company cannot terminate him prematurely before the expiration of that three-year lease based on their decision to sell the property. They have to wait until the lease expires before they say, now we're going to terminate you and sell the property. In this case, the lease had already expired three years ago, so Eklund was free to terminate Mr. Camel again based on their continuing ongoing intent to sell this property. And they did it under the current market value rather than the market value that was before. And I would address what's going on today, but the Court, I believe, denied my motion to augment the record. So, you know, if you can't really take evidence. I understand. So that's why I'm avoiding to talk about what's presently happening. But I think this case may moot what's going on now, depending on the decision. And I would also like to add that I believe this case would be very important for future dealers to decide how to proceed when they get an offer from an oil company, because dealers are now in a position where, under the PMPA, they can get an offer and they can either accept the offer, and there's case law on this, that they can accept the offer under protest, or they can, you know, and get an injunction preventing the escrow from closing, or they can close escrow. Those are the choices they have. If they're able to close escrow, I advise my clients, you should just close escrow. But sometimes they can't because the price is too high or the bank won't give them a loan that's higher than the market value. So they're left with injunctive relief. But if this decision stands, the injunctive relief really isn't going to help them. I'll reserve the rest for rebuttal. Thank you. Good morning. May it please the Court. Dwayne Lyons on behalf of Equi-Lyon Enterprises, also present with me, and Scott Watson. Two points, Your Honor, that I want to focus the Court's attention on initially, which is Mr. Levidev indicated that there were facts outside the record, and I don't want to focus on anything that has happened subsequent to the Court's order, because there was a motion that was filed and it was denied. But one thing that he did say, which is an undercurrent of the overall theme that Plaintiff is arguing, is that real estate prices are naturally always going to rise. And that's simply not true. It's certainly not in part of the statutory scheme that Congress enacted to suggest that there should be different rules for dealers in different parts of the country. Sure, in California presently, we are fortunate, or some people are fortunate, to have an increase in property values. But that's not always the case. I'm certain that we can think back to the 1990s when property values in California had declined. And so the Court should focus its questions on what happened in the year 2000 when the offer was granted or when Equi-Lyon made the bona fide offer to Mr. Camel and whether or not the district court's remedy adequately addresses the violation and whether the district court abused its discretion in formulating a remedy. Those are the only questions that the Court need concern itself with. As to the question of what the remedy is, it is clear under the PMPA that the district court has discretion to implement a broad panoply of remedies available to it. And the case, including whether there was good faith, bad faith, how the offer was formulated, and determine whether or not it should impose injunctive relief, a continuation of the franchise relationship, or in this case, what the district court did was decide that we should go back to square one and allow Equi-Lyon to either attempt to non-renew the franchise relationship again or do something else. That's what the district court did. It took the middle road approach, which is the most common, as the case LMP v. Shell Oil indicates, in formulating an appropriate remedy. Now we should look at whether or not that was an abuse of the district court's discretion. And we should look at what facts the district court was considering in formulating that remedy. The district court had occasion to examine Equi-Lyon's good or bad faith in making the decision in the first instance to terminate the franchise, excuse me, to non-renew the franchise relationship. The district court heard testimony and determined that Equi-Lyon's decision to non-renew the franchise was in good faith. And that's not objected to by plaintiff's counsel. Secondly, the district court had an understanding and appreciation that the offer that Equi-Lyon made to Mr. Camel was based on a third-party offer from Cherokee Festival, who was willing to pay $645,000 for this particular piece of property. The court heard testimony that suggested that perhaps Cherokee Festival had overvalued the property and that the property might not actually be worth $645,000. And so now the district court was forced to determine whether it should force Equi-Lyon to take $480,000, which was a price that was never on the table, when Equi-Lyon had a willing third party who was willing to pay more. And there was no evidence of any collusion between Equi-Lyon and the third party. After the jury verdict of the $480,000, people still wanted to pay $645,000? Is that what you're saying? They had a contract. It was part of a bulk sale, but they wanted to purchase a series of properties, and they were going to purchase it at $645,000. In the record, Equi-Lyon had done in 1999, a year before this particular sale, Equi-Lyon had received an offer from or, excuse me, had done an appraisal valuing the property at $515,000. So even in 1999, prior to the offer being made, Equi-Lyon had information that the property was worth at least $515,000. Now, we do have a jury verdict, and the district court was not obligated to order a forced sale because the court had a broad array of remedies available to it. So the court did take that into consideration. But the district court, knowing that Equi-Lyon had turned down, excuse me, had valued the property at $515,000, had a willing buyer who had a contract to buy it at $645,000, at that point in time, I think the district court did not abuse its discretion to say that it would be unfair to the property holder to force them to sell the property at a price that is less than the price that a willing third party is able to pay. And that's because the PMPA does not give the dealer an independent right to purchase the station. Counsel has cited no case, I'm not aware of any case, that says that the dealer has an independent right to purchase the station. And that's important because the PMPA severely restricts the rights of the property holder, in this case the franchisor. The franchisor doesn't have the ability to go out and get the best deal. They could try to get the best deal. They could try hard to negotiate with a third party, but that deal is always subject to the PMPA's requirement that before closing on a deal with a third party, the franchisor has to make a bona fide offer to the franchisee. And in that situation where there is a requirement of a bona fide offer having to be made to the franchisee, the PMPA restricts the franchisor's rights to do whatever he wants to with the property. And to ask the franchisor to do more than that, in this case to not only be forced to sell it at a price that you don't know what it's going to be, but to sell it at a price that's less than a willing third party has agreed to pay in the absence of bad faith, is something that district court rejected. So looking at the standard, was there abuse of discretion? I have found no facts in the record, and counsel has suggested no facts to indicate that the district court abused its discretion. There is no case that says a forced sale is required. There is no case that says that the ---- Ginsburg. Let me just ask. One point that he makes is that he got the preliminary injunction, and at that time you were in escrow on the 645,000 sale price. And so what he's saying, well, now that we won, we should go at least go back to where things were when they were frozen in time. That would assume, Your Honor, that all that the plaintiff is challenging is the sales price and the sale. And that's not what the PMPA deals with. The PMPA deals with the requirement that a franchisee be given a bona fide offer if the franchisor first determines to non-renew him. And that non-renewal has to be in good faith. So have you ---- I mean, the district court ordered that the franchise relationship remains in effect. So do you still have a franchise relationship in effect? After the district court's order ---- now I'm getting into the pending case. Equivant renewed ---- put the property up for sale and received bids and made a new offer to Mr. Camel, and Mr. Camel challenged that in a lawsuit that's pending before the district court. And there have been some post-trial motions. There's been a motion for summary judgment. It was granted, and now we're in a post-trial motion phase. The question as to whether or not at the time of the preliminary injunction Mr. Camel should be able to go back now to enforce the ultimate contract that he signed is not the issue that was raised by the pleadings, because not only did Mr. Camel challenge the property value, he challenged in the first instance Equivant's decision to sell the property. So this is not a situation where Mr. Camel simply said, we're just haggling about prices. He challenged whether or not Equivant's decision to sell was in good faith. And we had to put on evidence that the decision to sell was in good faith. If the decision to sell had been determined to be in bad faith, the Court could have said, you know what, there's not going to be a sale of this property. I'm going to order the continuation of a franchise relation. I'm going to afford myself or utilize one of the remedies that I have available. And impose one of many potential available remedies. What happens and what Mr. Camel is complaining about in this case is the fact that he is looking at property values in 2005 and comparing those to the offer price in 2000 and suggesting that he as the franchisee should reap the windfall for an increase in property values. And that's not the law. Equivant, as the owner of the property, bore all the risk of market downturn, of contamination being found on the property. Anything that could have happened to the property, Equivant remained responsible for during this time period. The PMPA does not require the franchisor to sell the property, price unseen, to the franchisee. The PMPA requires merely that the franchisor make a bona fide offer. In this case, the district court found that the bona fide offer prerequisite was not made and basically said to the parties, do it all over again. There's no evidence in the record that indicates that that is an abuse of discretion. There have been no facts suggested to indicate that it's an abuse of discretion. And therefore, I would ask that this Court affirm the decision of the district court. It was well reasoned. It was considered. All of the facts in the record were considered by the district court. And if the Court doesn't have any questions, I'll yield back the balance of my time. All right. Thank you very much, counsel. Counsel referred to an independent right to buy a property. We're not talking about that here. The PMPA requires that when an oil company decides, makes a decision that's in good They can non-renew the dealer. That's what happened here. The PMPA was triggered the minute Equilon decided to sell this marketing premises. And Mr. Camel's right to buy it was triggered that moment, back in August of 2000. So that's what we're talking about here. It's not an independent right of some in the ether out there. This is a conscious decision by Equilon, which has not changed. And that is in the record. Their decision to sell this premises has not changed since 2000. They've been wanting to sell this property since that time. And Mr. Camel has the right to purchase it. Now, when Equilon made the decision to sell this property, they didn't give him a right of first refusal from a third party. So the third party that Mr. Lyons is talking about is really a red herring in this case. Because the offer that was given, the sale of the property can be offered in two ways under the PMPA. Either a right of first refusal, under which the dealer cannot challenge the bona fide-ness of that offer, of the value. Or it could be given under the bona fide provision of the PMPA, when there is no third party. And in this case, it was given under the bona fide provision. So when it's given under the bona fide provision, the dealer has the right to purchase that property at a price that approaches fair market value. At trial, it was decided that the value offered to Mr. Camel did not approach fair market value. And the jury came back with a number that did approach fair market value. So that's what we're talking about here. It's not like Mr. Camel is saying, I want something more than what I'm entitled to. He only wants what is afforded to him under the PMPA. And it's unfair to require Mr. Camel, at the end of winning the trial, to now be left to the mercy of the market. Now, whether it goes up or down is irrelevant. The point is, is that the market is now going to decide the value at the time, at the conclusion of the trial, rather than a party's agreement that had already been enforced, regardless of whether it goes up or down. And the court should strive to create finality. When the parties went through three years of litigation and spent, you know, a lot of time and effort in trying to prove their case, at the end of the trial, when the party prevails, the court should try to do everything it can to create as much finality as possible to resolve that dispute that was at issue. And the dispute at issue was Equilon's offer. And that is what the court did not address here. The court simply rescinded that offer and said, the two of you are now left to your own devices. Everybody goes back to their corners. And if Equilon decides they want to continue this franchise or they want to continue trying to market it or sell the property at some other time, it can. Mr. Camel, you're just going to have to wait and see what Equilon does. And that's not finality. Finality would have been, okay, guys, you have escrow. This is what the price should be. You guys can close escrow at that price. That did not happen here. Counsel, thank you. Thank you, Your Honor. All right, Camel v. Equilon is submitted. And we will take up Mustang Marketing v. Chevron. Thank you, Your Honor.
judges: Tashima, Wardlaw, Collins